# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **DENIS A. RIVERA,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00346 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RANDALL C. MATHENA, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Denis A. Rivera, Pro Se Plaintiff; Mary Grace Miller and Richard Carson Vorhis, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Mathena, Barksdale, Duncan, Clarke, Elam, Parr, Stacey Day, Messer, Gilbert, Turner, Stephens, Williams, Dockery,[1] Mullins, Christopher Deel, Clinton Deel, and Ramey.*

Denis A. Rivera, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials denied him showers and outside recreation on several occasions during the summer of 2014 and the spring of 2016. While I will grant Rivera's motions seeking to supplement the record on his original claims with additional exhibits and argument, I must deny his pending motions for interlocutory injunctive relief as without merit. After review of the record as supplemented, I conclude that the defendants' Motions for Summary Judgment must be granted.

---

[1] In the Complaint, Rivera identified this defendant as Docketry. Because the defendant's submissions spell his name as Dockery, I will use that spelling and direct the clerk to correct the court's docket.

Rivera has been assigned Security Level S, the highest security classification in the Virginia Department of Corrections ("VDOC").[2] Because of his security level, at all times relevant to his Complaint, Rivera has been incarcerated in a special housing (or segregation) unit at Red Onion State Prison ("Red Onion"). The policy governing conditions in a segregation unit is VDOC Operating Procedure ("OP") 861.3. Barksdale Aff. ¶ 4 and Enclosure A, ECF No. 22-1. Inmates in this status are permitted limited out-of-cell activity. Whenever an inmate leaves his Special Housing Unit cell for any reason, he undergoes a strip search, is placed in restraints, is frisk searched outside his cell, and is escorted by correctional officers. *Id.* at OP 861.3(V)(D). When an inmate is initially transferred to a Level S housing unit, staff will orient him about the available services and how to access them. OP 861.3(V)(E)(1).

Segregation inmates, like inmates in the general prison population, regularly receive clean bedding and clothing and may possess personal hygiene items. *See gen. Id.* at OP 861.3(V)(E)(8), (9). They are issued one towel and one wash cloth and may sponge bathe in their cells. *Id.* at OP 861.3(V)(E)(8)(a), (13)(b). By policy, segregation inmates are offered the opportunity to shower and shave no

---

[2] This summary of undisputed facts is based on the documents in the record, taken in the light most favorable to Rivera as required on summary judgment. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

less than three times per week, unless security or safety considerations require otherwise. *Id.* at OP 861.3(V)(E)(13)(b). Segregation inmates are allowed a minimum of one hour of out-of-cell exercise on five separate days each week in a supervised area, including three days of outside exercise, unless security or safety considerations dictate otherwise. *Id.* at Barksdale Aff. ¶¶ 4, 8. During an institutional lockdown, all outside recreation and showers may be suspended for segregation units. *Id.* at ¶ 4.

Documents in the record, including two video clips that Rivera has asked me to consider, indicate the procedure that segregation inmates must follow to accept a shower or recreation session. Between about 6:15 and 7:15 every morning, a supervisory officer will announce that the shower and/or recreation list is being taken. Resp. to Mot. Compel, 16, ECF No. 46-3. The supervisor then goes to each cell in the unit and each inmate must verbally respond whether or not he wants the offered shower and/or outside recreation that day. *Id.*, at 27. If the inmate fails to do so, because he is asleep or responds in some nonverbal manner, the supervisor marks on the list that the inmate has refused the offered activity. *See id.* at 47, ECF No. 46-2. An inmate may also be marked as refusing the activity for noncompliance with other procedures, such as his cell being out of compliance, asking to postpone the activity, or not following directions during the strip search. *See, e.g., id.* at 34-35, 74, ECF No. 46-1.

Staff document each segregation inmate's daily activities, from meals to mental health assessments, on the special housing individual log sheet located on his cell door. Barksdale Aff. ¶ 5, ECF No. 22-1. This log indicates if the inmate refused, or was provided, a shower or outside recreation. *Id.* at ¶ 6.

Rivera has been continuously assigned to segregation since April 2014 and has been repeatedly advised of the need to comply strictly with the shower and recreation procedure. For example, he filed a grievance complaining that on April 5, an officer did not take him to the shower. The written, Level I response to his grievance stated:

> Offenders who fail to follow/comply with procedure and practice or become disruptive during recreation/shower times are refusing to accept the offered recreation/shower.

> You are housed as a security level "S" offender . . . . Due diligence will be placed on control of disruptive or abusive behavior. Dates and times that you do not accept recreation/showers either by your own volition or non-compliance are decisions and choices that you make. There is no evidence of procedure violation.

Resp. to Mot. Compel 2, ECF No. 46-3. Copies of other administrative remedy forms in the record include similar responses from officials, reminding Rivera that he will be marked as refusing a shower or outside recreation if he fails to verbally accept the offered activity at the time the list for the day is being created or if he fails to comply with other procedures. *See, e.g.,* Counter Aff. Exs., at 26, 28, 38, ECF No. 52-1.

In July 2016, Rivera filed this § 1983 Complaint, alleging that various supervisory officials and corrections officers had denied him outside recreation and/or a shower on numerous occasions "for no reason." Compl. ¶ 25, ECF No. 1. Specifically, he states that defendants Messer, Brewer, Day, Stephens, Williams, Dockery, Christopher Deel, Clinton Deel, and Ramey "denied/refused to provide [him] with outside recreation (i.e. fresh air and exercise) and shower(s)/sanitation" as required by OP 861.3, *id.* at ¶ 21, on the following dates in 2014: June 27, 28, and 29; July 1, 3, 4, 5, 6, 8, 10, 11, 12, 13, 15, 17, 18, 19, 20, 22, 24, 25, 26, 27, 29, and 31; and August 2, 3, 5, 7, 8, 9, 10.[3] On some of these days, he complains that the officer(s) did not take him to shower or to outside recreation, while on other days, he complains only that the officer(s) did not take him to one activity or the other.

Rivera also complains that in 2016, Messer, for no reason denied him a shower on March 19, May 1, 13, 15, and 18, and June 24; denied him outside recreation on March 20 and 23, April 1 and 3, and June 25; and denied him both a shower and outside recreation on March 24 and 29, and on June 26 and 29. Finally, Rivera complains that in 2016, Mullins denied him outside recreation and

---

[3] Rivera also alleges that Officers Miller and Baker denied him outside recreation and/or a shower on June 20, 21, 22, 24, and 26, 2014. He does not name these officers as defendants, however.

a shower on April 12; defendant Ramey denied him a shower on April 16; and Christopher Deel denied him a shower on April 29.

Rivera alleges that "for years [he] has had an ongoing Medical problem with skin infection bacteria that requires him to take a shower so that it goes away and not spread." *Id.* at ¶ 39. He states that he "has to appl[y] the medication prescribed (i.e. Selenium Sulfide) by the doctor for washing in showers" on Tuesdays, Thursdays, and Saturdays. *Id.* at ¶ 33; Compl. Ex. 4, at 29, ECF No. 1-1. Rivera alleges that as a result of being denied outside recreation and showers on multiple occasions in the summer of 2014 and the spring of 2016, he suffered the "re-appearance of fungal infection (i.e. skin infection/bacteria)," emotional and mental deterioration, depression, lack of energy and sleep, loss of appetite, and headaches. Compl. ¶ 43. He believes that washing himself in his cell instead of showering may cause the infection to spread.

Rivera contends that the officers who denied him outside recreation and showers violated his rights under the Eighth and Fourteenth Amendments. He also asserts that the defendant officials who serve in supervisory or administrative positions violated his rights by failing to enforce the VDOC policy requirement for segregation inmates to receive three showers and three hours of outside recreation per week and by refusing to act on his grievances and appeals about being repeatedly denied showers and outside recreation. As relief, Rivera seeks

monetary damages and preliminary and permanent injunctive relief ordering that he receive the number of showers and recreation periods required by VDOC policy every week.

Defendants Mathena, Barksdale, Duncan, Clarke, Elam, Parr, Lt. S. Day, Messer, Gilbert, Turner, Stephens, Mullins, Christopher Deel, Clinton Deel, Ramey, Williams, and Dockery have filed Motions for Summary Judgment.[4] The defendants do not dispute that Rivera did not receive a shower and/or outside recreation on the dates that he asserts. Rather, they contend that he was offered showers and recreation regularly as required by policy. Their evidence is that "[o]n the dates that Rivera did not receive recreation or a shower, he was not scheduled for the activity, the institution was on lockdown or he refused to attend on his own free will." Gilbert Aff. ¶ 5, ECF No. 36-2.

Rivera has responded to these motions, and I find them ripe for disposition. For reasons discussed herein, I conclude that the defendants are entitled to summary judgment. I also conclude that Rivera's separate motions seeking

---

[4] The court was unable to accomplish service of process one defendant, Correctional Officer Day, s*ee* ECF No. 33, 44. Correctional Officer Brewer, although served, has not responded to the Complaint. For the reasons discussed in this Opinion with regard to the other defendants, however, I find that Rivera has not stated any actionable constitutional claim against Day or Brewer. Accordingly, I will summarily dismiss such claims without prejudice under 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal of prisoner complaint against governmental officials for failure to state a claim). As such, I will deny as moot Rivera's motion seeking additional court assistance regarding service of process on these defendants.

preliminary injunctive relief based on events that occurred after the period at issue in the Complaint must be denied.

## II.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* I must draw all reasonable inferences from the facts in favor of Rivera, the nonmoving party. *Williams*, 372 F.3d at 667. Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).

### A. No Hazardous Conditions Claim.

The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th

---

[5] I have omitted internal quotation marks, alterations, and citations throughout this Opinion, unless otherwise noted.

Cir. 1996). "[T]he Constitution does not mandate comfortable prisons," however, and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981). It is well established that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Rivera must also show that each defendant was deliberately indifferent — that each one knew of and disregarded an excessive risk to his health or safety. *See Farmer*, 511 U.S. at 837.

The defendants contend that Rivera has not established the necessary elements of a hazardous conditions claim arising from denial of showers or outside recreation. I agree.

First, Rivera has not demonstrated that the defendants deprived him of any necessity of life by not providing him with every scheduled shower or recreation period. He does not deny that at all times, he retained the ability to wash himself in his cell. *See, e.g., Shakka*, 71 F.3d at 168 (finding no constitutional violation when plaintiff was not given a shower for three days after having human feces thrown on him, because he had access to water with which to clean himself). I also find no evidence that Rivera is prevented from performing some forms of body movement and exercise in his cell, such as stretching and situps, or during other out-of-cell activities besides outside recreation.

Second, Rivera has not presented evidence to persuade a reasonable fact finder that the denial of the scheduled showers and outside recreation sessions has caused him "significant physical or emotional harm." *Id.* at 166. As stated, he vaguely alleges that lack of these activities has caused the reappearance of his skin infection, emotional and mental issues such as depression, lack of energy, sleep, and appetite, and headaches. He offers no medical evidence to support a finding that any of these alleged conditions threatened him with significant harm. His submissions indicate that he has been receiving medication for the infection for years and for headaches, *see, e.g.,* Counteraff. ¶ 29, ECF No. 52; that the mental health staff would not treat his reported sleep disorder with medication, Counteraff. Ex. 11, at 17, ECF No. 53-2; that QMHP Huff considered his mental health

condition to be "stable" throughout 2016, *id*., at 25; and that QMHP Trent did not note any concerns regarding Rivera's mental health status or identify a need to refer him to the psychiatrist. Mot. for Inj. Ex. 4, at 8, ECF No. 55-2.

Third, Rivera has failed to prove causation, a critical element of his claim:

> [T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must "produce evidence of a serious or significant physical or emotional injury *resulting* from the challenged conditions," *Strickler* [*v. Waters*], 989 F.2d [1375,] 1381 [(4th Cir. 1993], or demonstrate a substantial risk of such serious harm *resulting* from the prisoner's unwilling exposure to the challenged conditions, *see Helling* [*v. McKinney*], 509 U.S. [25, 36 (1993).]

*Shakka*, 71 F.3d at 166 (emphasis added). More specifically, to show a need for injunctive relief, Rivera must prove "the seriousness of the potential harm and the likelihood that such injury to health will actually be *caused by*" the occasional denial of showers or outside recreation and that the risk of the condition causing such harm is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk" *Helling*, 509 U.S. at 36 (emphasis added). Rivera presents no evidence, other than his speculative generalizations, that any of the health-related conditions he claims to suffer has been, or is likely to be, triggered or aggravated to any significant extent by the occasional inability to shower or exercise outdoors.

Fourth, Rivera fails to establish any defendant's deliberate indifference. He presents no evidence that any of the defendants knew facts showing them that

denial of a shower or outdoor exercise session now and again created an excessive risk to Rivera's health or safety. Rivera contends that he told officers, supervisory officials, and administrators, verbally and through grievances and appeals, of the medical need for him to shower to control the spread of his skin infection and promote its healing. He similarly complained that lack of outside recreation had adverse effects on his health. Rivera's submissions indicate, however, that at no time during the periods at issue in this lawsuit did he have a doctor's order for him to receive showers or outside recreation for medical or mental health reasons, even if he failed to comply with procedures related to these activities.

The defendants Rivera has named are not medically trained and are not required to take Rivera's self-diagnosis — that he required showers for medical reasons – as true. *See Green v. Senkowski*, 100 F. App'x 45 (2d Cir. 2004) (unpublished) (finding that plaintiff's self-diagnosis without any medical evidence was insufficient to defeat summary judgment on a deliberate indifference claim). Rather, these defendants could rightfully rely on Red Onion's medical staff to determine and inform them definitively if Rivera had, in fact, a medical need for regular showers, regardless of policies for security and order. *See Shakka*, 71 F.3d at 167; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("the essential test is one of medical necessity and not simply that which may be considered merely desirable").

Rivera asserts that he was not "disruptive," that he did not "in any way violate[] any prison policy," and that the defendants refused to provide him showers and outside recreation "for no reason." Compl. ¶ 25, ECF No. 1. The record as a whole does not support these assertions, however. The many copies of Rivera's informal complaints and grievances that he or the defendants have submitted to the court indicate that Rivera has lost his shower and recreation opportunities on most occasions because he has failed to comply with the activities list procedure. Because Rivera has often failed to make a verbal response during the morning activity list procedure, the supervisors have marked him as having refused the activity, and their subordinate officers have refused to make exception to the list when providing the activity to other inmates who properly requested it. Similarly, the supervisory and administrative personnel who reviewed Rivera's grievances and appeals about these events have found the loss of showers and recreation to be Rivera's choice — expressed through his lack of compliance with procedures.

Rivera contends that the supervisor should blow a whistle before taking the list and make more effort to find out Rivera's preference while making the list (by waking him if he is asleep, ensuring communication with him, or allowing him to accept a shower or outdoor recreation by leaving a note on his door). He complains that the escorting officers should allow him the activity even if the list

says that he refused it or that they should come back for him out of order if he is eating or using the toilet. These disagreements with the procedures, however, do not negate the fact that Rivera's failure to comply with procedures appears to be the primary cause for his missed opportunities for showers and outside recreation. Thus, whatever discomfort he may have suffered resulted from his own behavioral choices. Moreover, Rivera's allegations that the officers themselves occasionally violate these procedures do not state any § 1983 claim against them. *See e.g. Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (finding that state official's "failure to abide by [state] law is not a federal due process issue").

B. No Medical Treatment Claim.

If I construe Rivera's Complaint as raising a separate claim alleging inadequate medical care, he must show both a serious medical need and the defendants' deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). His claim fails on both facets of this standard.

Rivera must show that the medical condition at issue was objectively serious, meaning, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (holding that medical condition is sufficiently serious if it is "a condition of urgency, one that may

produce death, degeneration, or extreme pain"). As stated, no one on the mental health staff has diagnosed Rivera with emotional or mental conditions mandating treatment. While the doctor has prescribed cream for Rivera's skin condition, Rivera presents no evidence that the doctor has extended that prescription to include mandatory showers. Without such evidence, I cannot find that Rivera has presented a material disputed fact on which he could prove that he has a serious medical or mental health need for mandatory, regular showers and outside recreation.

For his medical claim, Rivera must also show deliberate indifference. To act with deliberate indifference, an official must have been personally aware of facts indicating a *substantial* risk of serious harm, and also must have actually recognized the existence of such risk. *Farmer*, 511 U.S. at 838. The indifference must have been sufficiently egregious to offend "evolving standards of decency." *Estelle*, 429 U.S. at 106. For reasons discussed above, Rivera simply offers no evidence of each defendant's actual knowledge of a medical need to provide mandatory showers and outside recreation to Rivera regardless of his lack of procedural compliance. I cannot find that any defendants' action to deny Rivera a shower or an episode of outside recreation constituted "unnecessary and wanton infliction of pain" or was "repugnant to the conscience of mankind" so as to amount to a violation of the Eighth Amendment. *Id.* at 105-06.

## C. No Due Process Claim.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A state regulation may create a protected liberty interest only if it provides "a basis for an interest or expectation" regarding a condition of confinement, *Prieto*, 780 F.3d at 250, and involves a condition that "impose[] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Rivera apparently believes that OP 861.3 concerning segregation conditions creates for him a constitutionally protected liberty interest in having three showers and three outside recreation sessions every week. At the most, however, I conclude that this regulation may create "a basis for an interest or expectation" for segregation inmates to be offered an opportunity to accept participation in these activities, when prison security and scheduling needs allow. *Prieto*, 780 F.3d at

250. I cannot find that the statute creates any expectation for Rivera to receive these activities whether or not he requests one in the manner that officials require and complies with related procedures.

I also cannot find that occasionally being denied showers and outside recreation sessions constitutes an "atypical and significant hardship" for Rivera compared to normal prison conditions. *Sandin*, 515 U.S. at 484. It is undisputed that security needs in the prison setting sometimes call for lockdowns and cancellation of these activities for several days at a time. *See* Barksdale Aff. ¶ 12, ECF No. 36-1 (regarding lockdown at Red Onion from October 10 to 23, 2016, when out-of-cell "offender movement was not permitted"). For these reasons, I will grant the defendants' Motions for Summary Judgment as to Rivera's due process claim.

### D. No Equal Protection Claim.

The Equal Protection Clause of the Fourteenth Amendment "keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). To prove an equal protection claim, an inmate "must first demonstrate 'that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Id.* If

he makes these showings, he must also demonstrate that the challenged policy is not "reasonably related to [any] legitimate penological interests." *Id.* at 732.

Rivera's equal protection claim fails on the first element. The lone fact that other inmates received showers or recreation on days when he did not is insufficient to show that Rivera was similarly situated to them in all relevant respects. Inmates who verbally communicated to the supervisor that they wanted a shower or recreation session during the morning list procedure and complied with other cell and escort procedures were not similarly situated to River, if he did not take any one or more of these required steps.

Rivera contends that video footage from the Rapid Eye surveillance camera in his housing unit will prove his equal protection and other claims and that the defendants should incur a spoliation sanction because they failed to preserve all of this video footage as he requested. I find no basis for a spoliation sanction or proof from the existing video of any of Rivera's claims.

I have reviewed the two video clips that the defendants have provided, showing the shower procedures in Rivera's unit on April 29 and May 1, 2016. Rivera has viewed both clips and states that he is not among the inmates whom the video shows being escorted out of their cells and back. *See* Counter Aff. ¶¶ 45-46, ECF No. 53-1. The video shows the supervisor making a leisurely round of the cells on the top tier and marking on inmates' door logs. Video footage does not

include audio or show inmates' activity inside the cell, however. As such, the footage does not reflect whether or not Rivera and/or other inmates verbally informed the supervisor that they wanted to shower or why Rivera was not provided a shower on those days. Thus, I cannot find that the available footage proves Rivera's claims or that any the other requested video clips would do so.

Spoliation is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009). Under Rule 37(e) of the Federal Rules of Civil Procedure,

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

At most, the video footage provided verifies that on April 29 and May 1, 2016, Rivera was not escorted to the showers or the recreation area, although other inmates received these activities. The defendants failed to preserve similar video footage from all the dates when Rivera did not receive these activities, as alleged in the Complaint. The defendants admit that Rivera did not receive showers and/or outside recreation on these dates, however. As such, I find no basis to believe that the unavailable video footage would change the outcome on summary judgment. Accordingly, I cannot find that Rivera was prejudiced by the video's unavailability or that any spoliation sanction is warranted. I will deny Rivera's motion for such sanctions and grant the defendants' Motions for Summary Judgment as to his equal protection claims.

### E. No Ground for Interlocutory Injunctive Relief.

Since filing his § 1983 Complaint, Rivera has filed four separate motions seeking interlocutory injunctive relief based on events that occurred months or even years after the events at issue in this action (ECF Nos. 17, 39, 55, and 61). He has also filed new pleadings (ECF No 56 and 60) with additional facts, argument, and exhibits, many of which are already part of the record. These new events also concern officials not named in the Complaint as defendants and allege other types of adverse actions against Rivera unrelated to the claims in the Complaint, including: retaliatory denial of showers and outside recreation in

December 2016 because of a prior lawsuit; delayed access to Step Down program activities required to become eligible for less restrictive housing assignments; denial of administrative remedy forms; denial of access to legal materials; denial of outside recreation for six weeks in January and February 2017; transfer to a less desirable cell (too cold and out of surveillance camera range) after Rivera wrote and asked an outside activist to call a local radio station and mention the names of Rivera and several Red Onion officials; receipt of smaller portions of food; denial of a protective glove for toilet cleaning on one occasion; placement in a shower with a defective mirror and lower lighting; omission from the Passover list because his paperwork was not received; and uncomfortable living conditions, such as a noisy inmate in a neighboring cell, cold air coming from his vent, and denial of possession of certain authorized property items; verbal threats from an official late at night; racial slurs from an official during a recreation session; officials' failure to do thirty-minute security checks as required by policy; and repeated denials of showers and/or recreation in June and July 2017, despite his posting a written request for one or both of these activities on his cell door. In deciding the claims Rivera raised in the Complaint, I have also considered all of the documents Rivera has submitted with these motions. I cannot find, however, that Rivera is entitled to the extraordinary relief he seeks in these motions.

The party seeking a preliminary injunction must make a clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). I have already held that Rivera's claims in his Complaint fail on the merits,[6] and that he has not demonstrated how he has suffered, or is likely to suffer, significant harm without mandatory, regular showers and outside recreation. As such, I also cannot find that the balance of the equities or the public interest weigh in favor of preliminary injunctive relief. On the contrary, I find that prison officials' strict enforcement of the activities procedure — by requiring Rivera and other inmates to make a verbal request for a shower or outside recreation while the supervisor is compiling the activities list for that day — furthers the public interest in training such inmates to comply with rules.

Moreover, an interlocutory injunction can be warranted only where the movant establishes a relationship between the injury claimed in the motion and the

---

[6] I decline to consider Rivera's motions seeking interlocutory injunctive relief as motions seeking to supplement or amend the underlying Complaint. Rivera has never expressly moved to amend or supplement his initially stated claims or to add defendants. Furthermore, Rivera filed his interlocutory relief motions within days of the events at issue in those motions. Thus, I find that that the chances of his having first fully exhausted available administrative remedies are slim to none, leaving any possible § 1983 claims buried in these allegations barred from suit in this case by 42 U.S.C. § 1997e(a) (barring federal civil actions regarding prison conditions prior to exhaustion of available administrative remedies).

conduct giving rise to the complaint itself. *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). As stated, Rivera's motions for interlocutory relief rest on alleged incidents subsequent to the periods at issue in the Complaint and, in most cases, not clearly connected to the named defendants. For the reasons stated, I must deny Rivera's motions for interlocutory injunctive relief, ECF Nos. 17, 39, 55, 60 and 61.[7]

III.

For the reasons stated, it is hereby **ORDERED** as follows:

1.      The clerk shall CORRECT the spelling of defendant Dockery's name on the docket;

2.      Rivera's motion seeking to supplement his Counter Affidavit (ECF No. 53) is GRANTED;

3.      Rivera's motion seeking a spoliation sanction (ECF No. 42) is DENIED;

4.      The defendants' Motions for Summary Judgment (ECF Nos. 21 and 35) are GRANTED;

---

[7] Rivera's most recent submission in this case, ECF No. 59, is a motion for unspecified relief that he moves to file under seal. The allegations in this motion have no bearing on the claims in the Complaint. It will be stricken pursuant to Rule 12(f)(1), and retained under seal.

5.    Rivera's claims against correctional officers Day and Brewer are DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1915A(b)(1),[8] and Rivera's "Motion Requesting Help" regarding these defendants (ECF No 54) is DISMISSED as moot;

6.    Rivera's motion seeking to supplement his demand for interlocutory injunctive relief (ECF No. 56) is GRANTED, but his motions seeking such relief (ECF Nos. 17, 39, 55, 60, and 61), as supplemented, are DENIED; and

7.    Rivera's Motion to Seal (ECF No. 59) is STRICKEN and retained under seal.

A separate Judgement will enter herewith for defendants Mathena, Barksdale, Duncan, Clarke, Elam, Parr, Stacey Day, Messer, Gilbert, Turner, Stephens, Williams, Dockery, Mullins, Christopher Deel, Clinton Deel, and Ramey.

ENTER:  August 14, 2017

/s/  James P. Jones
United States District Judge

---

[8]    Because Rivera's submissions as a whole fail to support the constitutional claims he asserts in the Complaint, I find it clear that his allegations fail to state any constitutional claim against Day and Brewer. *See* 28 U.S.C. § 1915A(b)(1) (authorizing summary dismissal of prisoner's claims against governmental defendant for failure to state a claim).